## BUSH v. INDIANAPOLIS UNION RY. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. March 4, 1926.)

No. 3514.

1. Patents ⚖328.

Patent No. 855,160, claims 1 to 6, for train shed permitting escape of gases and steam, *held* invalid for want of novelty.

2. Patents ⚖328.

Patent No. 1,101,783, claims 1 to 3, for improving construction of smoke duct and ventilating duct in train shed, *held* invalid because of anticipation.

Appeal from the District Court of the United States for the District of Indiana.

Patent infringement suit by Abraham L. Bush against the Indianapolis Union Railway Company and others. From a decree dismissing the suit, plaintiff appeals. Affirmed.

Chas. W. Parker, of Buffalo, N. Y., and Geo. I. Haight, of Chicago, Ill., for appellant.

Robert J. Fisher, of Washington, D. C., and J. J. Daniels, of Indianapolis, Ind. (Albert Baker, of Indianapolis, Ind., on the brief), for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. A bill, charging infringement of claims 1 to 6 of letters patent No. 855,160 and claims 1 to 3 of letters patent No. 1,101,783, was dismissed by the District Court. Infringement is admitted. The defense is noninvention.

[1] The stated object of the earlier patent is to provide a train shed, with a roof a short distance above the engine smokestacks, so that the gases and steam will escape directly into the outer air. The substance of the claims is embodied in claim 1, viz.:

"In a railroad train shed, the combination of" (a) "a roof having transverse members which extend across the track," (b) "and longitudinal walls carried by said members and forming between them a ventilating duct which extends lengthwise and centrally over the track. * * *"

That patent was applied for in December, 1905, and was issued in May, 1907. The construction, disclosed in the drawing and printed part of the specification, is wholly devoid of novelty. The use of purlins or built-up girders, supported upon long rafters, for the double purpose of carrying one end of short rafters and forming an opening in roof construction, is familiar to every carpenter's apprentice, even from the saw and hammer stage of his apprenticeship.

[2] The stated objects of the second patent, applied for in 1910 and issued in 1914, seven years after the first patent, are:

"To improve the construction of the smoke duct with a view of preventing the entrance of excessive amounts of snow and rain through the same, and to improve the construction of the ventilating duct leading through the wall of the duct from the under side of the roof into the smoke duct with a view of facilitating the escape of steam or gases from underneath the roof."

The latter object, covered by the fourth claim only, is not here involved. The first claim, which states the substance of them all, is:

"In a railroad train shed, the combination with a roof having transverse members, a smoke duct arranged therein lengthwise over the track and having opposing side walls which converge upwardly and are supported by the said roof members. * * *"

The new element is the converging upwardly of the side walls of the duct. Likewise the drawings and specification of the second patent show no novel construction.

We are of opinion that the Portsmouth Harbor station construction, as shown in "Glaser's Annalen fur Gewerbe und Bauwesen," vol. 56, No. 668, published in the city of Berlin, Germany, with particular reference to the illustration and description on pages 142 and 143 of the issue of April 15, 1905, shows a complete anticipation of plaintiff's device in his first patent. Referring to the figures in that article, it is said: "There slotlike openings, through which the smoke passes off directly, are provided for the length of the track over which the locomotives travel, in the very low train sheds."

Plaintiff seeks to avoid the effect of this publication in several ways:

(a) That it contains no disclosure whatever of the specific construction set forth in the claims of the patent in suit. A sufficient answer is that the only construction shown by plaintiff is a common and well-known one, which any one could make.

(b) It is urged that " 'slotlike openings * * * are provided for the length of the track' does not define a single continuous slot over each track as correctly as it does a plurality or series of slotlike openings over each track, and the latter interpretation is the only one justified by the picture, Fig. 13. This figure does not show a continuous opening." Neither do plaintiff's figures show a continuous opening. The specification clearly shows that the opening is broken by all the long rafters used in the construction.

(c) It is urged that the plaintiff's invention was made prior to the German publication. We are clearly of opinion that this is without merit. Publication was on April 15, 1905, and it is not claimed that plaintiff's completed drawing was made prior to May 3, 1905. Whatever plaintiff did prior thereto was incomplete.

Regardless of the anticipation by that publication, there was, in the prior art, in both American and English patents, numerous disclosures, with open conduits extending the whole length of the low overhead construction. In the Greacen patent, No. 66,703, issued in 1867, a conduit the entire length of the structure and low down over the engine smokestack is clearly shown. There is the same idea in Swaine British patent, No. 18,971, issued in 1900, and the fact that the conduit was in a tunnel does not detract from the fact that it was a low construction of a long conduit directly over

the tracks. In Dulier British patent, No. 10,782, issued in 1898, there is shown a continuous conduit, so low down that the stacks of the locomotives, as then constructed, extended into the conduit. The Crocker train shed, as shown in the "Railway Review," vol. 33, for the year 1893, describes a construction of a train roof containing a longitudinal conduit over the center of the tracks, where the smoke and gases are discharged immediately into the outer air.

Whether any of those devices read upon plaintiff's claim, or whether they ever came into practical use, are matters that are here relatively unimportant, because in them is to be found the teaching of the low train shed, the longitudinal conduit over the center of the tracks, and the discharge through the conduit of smoke and gases to the outer air, sometimes in one manner and sometimes in another. There was nothing for plaintiff to do, except to construct the conduit in some special manner. Except that the purlins, carried by the long rafters, form the sides of the ventilating duct, there is absolutely no limitation in the first patent as to the method of its construction. The construction shown in the second patent would doubtless have been an infringement of the first, and there certainly could be no invention under the second patent in the converging sides of the duct to keep out the snow and rain.

The decree is affirmed.